UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **YING Y. YANG**, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>**VILLAGE SUPER MARKET, INC.**, *et al.*,<br><br>　　　　　Defendants. | **Civil Action No.: 18-cv-10486-CLW**<br><br>**OPINION** |

**CATHY L. WALDOR, U.S.M.J.**

I.　**Introduction**

This matter is before the Court on the motion of defendants Village Super Market, Inc., Village Super Market of NJ, L.P., Ronald L. Goley, Hua Huang, and Joaquim Batista (named herein as Jack Batista) (collectively, "Defendants") seeking partial summary judgment in connection with the claims asserted against them by plaintiffs Ying Y. Yang ("Yang"), Chun T. Lee ("Lee"), and Liping Sun ("Sun") (collectively, "Plaintiffs") (ECF No. 143). The motion is fully briefed and decided without oral argument per FED. R. CIV. P. 78(b) and L. CIV. R. 78.1. Upon careful consideration of the parties' submissions and for the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

II. <u>**Background**</u>[1]

Plaintiffs are former employees of Defendants. *See* Second Amended Complaint, ECF No. 62 (the "SAC") at ¶ 3. They each worked for Defendants as chefs: Yang from September 2016 to April 2018; Lee from June 2014 to March 2019; and Sun from March 2015 to November 2018. *Id.* at ¶¶ 32, 48, 50; *see also* Defendants' Statement of Material Facts Not in Dispute ("Defendants' Statement") (ECF No. 143-1) at ¶¶ 16, 18, 21; Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts ("Plaintiffs' Response") (ECF No. 149-5) at ¶¶ 16, 18, 21. Yang and Sun were hired at $40,000 annual salaries; Lee at $750 weekly. Defendants' Statement at ¶¶ 17, 19, 22; Plaintiffs' Response at ¶¶ 17, 19, 22. Although Plaintiffs' complaint passingly references Defendants' alleged violations of "multiple aspects of the federal and state labor laws", *see* SAC at ¶ 57, their two claims sound solely in alleged nonpayment of overtime wages; namely, that Defendants failed to pay them one and one-half times their regular rates of pay for each hour worked above forty in a given workweek, as required under the Fair Labor Standards Act (the "FLSA") and the New Jersey Wage & Hour Law (the "WHL"). *See id.* at ¶¶ 59-68.

Defendants now move for summary judgment on three discrete issues. First, they seek to bar as untimely any WHL and FLSA claims arising, respectively, more than two years and three years before the filing of the lawsuit. Second, they ask for all claims accruing after January 1, 2018 to be dismissed, citing their compliance with overtime laws and full payment of overtime

---

[1] This matter's somewhat convoluted procedural history is not relevant to the present motion. Briefly stated, Yang filed this lawsuit as a putative FLSA collective action in June 2018. ECF No. 1. Thereafter, Yang amended his complaint; the District Court conditionally certified the FLSA collective; Plaintiffs filed a second amended complaint; the FLSA collective was de-certified on consent; and all claims but those belonging to Plaintiffs were dismissed without prejudice. *See* ECF No. 4, 28, 29, 45, 62, 99, 118. The parties have consented to the undersigned's jurisdiction to enter a final judgment per 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. ECF No. 101.

2

wages beginning at that time. Finally, they ask the Court to fix the method of calculation of any unpaid overtime wages owed to Plaintiffs. In their opposition, Plaintiffs seek a finding that an amendment to the WHL passed after their employment with Defendants may be applied retroactively. The Court addresses these matters below.

### III. Legal Standard

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material and genuine if it "'affect[s] the outcome of the suit under the governing law' and could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The party seeking summary judgment "has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact." *Id.* (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998)).

### IV. Analysis

#### a. Statutes of Limitation

The FLSA sets "a two-year statute of limitations for an employer's violation of FLSA standards unless the employer's violation was 'willful,' in which case the statute of limitations is three years." *Brock v. Richland Shoe Co.*, 799 F.2d 80, 81-82 (3d Cir. 1986), *aff'd sub nom. McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) (citing 29 U.S.C. § 255(a)).[2] The version of the WHL in effect at the time this action was filed

---

[2] "Whether a violation of the FLSA is willful is a question of fact . . . ." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 273 (3d Cir. 2010) (citing *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 208 (3d Cir. 2005)).

3

provided a two-year statute of limitations. *See* N.J.S.A. 34:11-56a25.1, notes to 2019 amendment (noting August 2019 change from two-year to six-year limitations period).[3] Defendants therefore ask that the Court set a cutoff date of three years before the June 12, 2018 filing of the action for Plaintiffs' FLSA claims and a two-year cutoff date for their WHL claims. Plaintiffs do not oppose this request, which reflects a proper application of the relevant limitations periods. *See, e.g.*, *Jun Yin v. Hanami Westwood, Inc.*, 2016 U.S. Dist. LEXIS 180730, at *21 (D.N.J. Dec. 30, 2016) (for FLSA claim, "the relevant time period is up to three years prior to the date of the filing of the complaint"). Accordingly, the earliest date of employment for which Plaintiffs may recover under the FLSA is June 12, 2015. The earliest date for recovery under the WHL is June 12, 2016.

   b. **Post-2018 Liability**

Defendants seek to have the Court apply a January 1, 2018 cutoff date for Plaintiffs' damages. They argue that beginning that date, they paid Plaintiffs on an hourly salary basis and instituted overtime pay measures to ensure Plaintiffs were paid the proper premiums for all overtime hours worked thereafter. They submit pay stubs, earnings registers, and payroll journals reflecting such payments. *See* Defendants' Certification (ECF No. 143-4) ("Def. Cert."), Exhibits 11-19.

The Court finds Defendants' evidence to be credible, reflective of the proper payment of overtime wages beginning January 1, 2018, and unrefuted by Plaintiffs. The best Plaintiffs do is stating that they "[c]annot deem [Defendants' records] disputed or undisputed, as this is Defendants' internal record." *See* Plaintiffs' Response at ¶¶ 23-29. But the fact that Defendants' evidence consists of Defendants' "internal record[s]" does not undermine the credibility or

---

[3] Plaintiffs do not argue, and the Court does not find, that Plaintiffs' WHL claims — which relate to a period of employment before the statutory amendment — should be subject to the six-year limitations period.

weight of that evidence. Plaintiffs further argue that they "did not receive proper notice about the alleged change in pay rate or pay style" and that they did not receive paystubs reflecting the change to their wages. Opp. at 6-8. As noted, though, Plaintiffs' claims assert nonpayment of overtime wages, not that Defendants failed to provide them wage notices. *See* SAC at ¶¶ 59-68 (claiming damages solely for unpaid overtime). Even if true, therefore, the assertion that Plaintiffs did not receive such notices has no impact on the sole relevant question of whether they received overtime pay. *Cf. Sniscak v. Borough of Raritan*, 86 F. App'x 486, 488 n.1 (where § 1983 claim was based on unpaid wages and plaintiffs provided no evidence of denied compensation, district court did not err in granting summary judgment on § 1983 claim).

Because the record thus contains considerable evidence demonstrating proper overtime payments after January 1, 2018 and no evidence to the contrary, judgment on this matter in Defendants' favor is appropriate. *See, e.g.*, *id.* at 487-88 & n.1 (affirming summary judgment where defendants "submitted voluminous payroll records seeking to show that Plaintiffs were properly compensated [and] Plaintiffs' blanket allegation that certain amounts were still owed to them was never connected to a single payroll record, timesheet, or other documentary evidence. . . . Absent supporting evidence of denied [overtime] compensation, [plaintiffs'] claims fail."); *Harris v. Healthcare Servs. Grp.*, 2008 U.S. Dist. LEXIS 55077, at *8-9 (E.D. Pa. July 18, 2008) ("This record reflects that Rogers was paid one and one-half times her regular rate of pay for the 15.5 hours of overtime she worked. No evidence in the record suggests she worked additional overtime for which she was not paid. Therefore, no reasonable fact finder could find that she in fact performed work for which she was improperly compensated. Accordingly, Healthcare's motion for summary judgment will be granted as to Rogers."); *cf. Walsh v. Innovative Design & Dev. LLC*, 2023 U.S. Dist. LEXIS 39563, at *9 (D.N.J. Mar. 8, 2023) ("While the payroll records

purport to show the number of overtime hours worked by each employee and the rate of pay the employee received, Plaintiff identifies evidence challenging the accuracy of these records and providing a reasonable basis to find that overtime hours were not properly compensated, making summary judgment inappropriate.") (citation omitted). As a result, the Court will grant Defendants' request to limit any recovery to Plaintiffs' dates of employment before January 1, 2018.

    c.  **Calculation of Damages**

As noted, both the FLSA and WHL require employees to be paid one and one-half times their regular rate for every hour in excess of forty hours worked in a given workweek. *See* 29 U.S.C. § 207(a)(1); N.J.S.A. 34:11-56a4. Defendants now ask the Court to establish a method for calculating any overtime wages that may be owed to Plaintiffs.

The key issue here is determining Plaintiffs' regular rates of pay. *Cf. Smiley v. E.I. DuPont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016) ("The regular rate at which an employee is paid for 'straight time'—or the first forty hours of work in a week—is integral to the issue of overtime payment . . . ."). Generally speaking, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see also Smiley*, 839 F.3d at 330 ("[T]he regular rate is a readily definable mathematical calculation that is explicitly controlled by the FLSA. . . . There are two components to the calculation: (1) the dividend, which includes total remuneration minus statutory exclusions; and (2) the divisor, which includes all hours worked.") (citing 29 C.F.R. § 778.109).

Defendants initially proceed on the theory that because Plaintiffs were hired to work fifty-hour workweeks, their pay rates should be calculated by dividing their weekly salaries by fifty. For example, Yang was hired at a $40,000 annual salary. Defendants divide this figure by fifty-two for a weekly salary of $769.23.[4] They then divide this figure by fifty for an hourly straight rate of $15.38. Finally, they multiply this figure by one and one-half to reach the overtime rate, which, when properly calculated, is $23.07.[5] *See* ECF No. 143-2 at 20.

In opposition, Plaintiffs reference 29 C.F.R. § 778.113(a), which states that "[i]f the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a).[6] They argue that the fact that their wage records list their salaries alongside forty-hour figures demonstrates their salaries were intended to compensate them for forty hours per week under 29 C.F.R. § 778.113(a), in turn creating a question of material fact on Defendants' fifty-hour theory that precludes judgment in Defendants' favor.[7]

---

[4] "Where the salary covers a period longer than a workweek, . . . it must be reduced to its workweek equivalent. . . . Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above." 29 C.F.R. § 778.113. The analysis for annual salaries is therefore the same as for weekly salaries, with the former requiring the extra step of reducing an annual salary to a weekly one by dividing it by fifty-two. *Cf. id.* ("A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks).").

[5] Defendants list this final product as $22.55. This appears to be a mathematical or typographical error.

[6] It is unclear whether Section 113(a)'s "intended to compensate" rule may apply to Yang and Sun, since it applies "[i]f the employee is employed solely on a weekly salary basis," *see* 29 C.F.R. § 778.113(a), and Yang and Sun were hired with annual salaries. The Court need not resolve this question, as Defendants' argument fails even assuming this method applies to all Plaintiffs.

[7] Plaintiffs also cite *Morales v. Aqua Pazza LLC*, 2022 U.S. Dist. LEXIS 95768 (D.N.J. May 27, 2022) for the notion that "absent any argument by the employer that an alternate means of calculation should be used, 'the regular rate is calculated by dividing the salary by 40 hours a week.'" *Id.* at *14-15 (quoting *Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, 2018 U.S. Dist. LEXIS 29377, 2018 WL 1027446, at *4 n.3 (D.N.J. Feb. 23, 2018)).

The Court agrees with Plaintiffs on this point. Initially, it is unclear which method of calculation Defendants want the Court to adopt. As noted, their argument initially proceeds upon 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.109, which provide that the divisor in the regular rate calculation is to be based on the number of hours actually worked in a given week. *See* ECF No. 143-2 at 19. But Defendants then argue that the divisor should be fifty across the board, not because Plaintiffs actually worked exactly fifty hours each week, but because their offer letters indicated their salaries were intended to compensate them for fifty hours of work per week. *See id.* at 20. On reply, they likewise seem to agree that 29 C.F.R. § 778.113's "intended to compensate" rule controls. *See* ECF No. 150 at 17.

Ultimately, it is immaterial which theory Defendants proceed upon, as, in either instance, the record is sufficiently unclear so as to create a genuine issue of material fact to preclude judgment as a matter of law. To the extent Defendants want the Court to apply a fifty-hour divisor based on this being the number of hours actually worked, there is ample evidence indicating Plaintiffs did not work exactly fifty hours each workweek. *See, e.g.*, ECF No. 149-2 at ¶ 3; 149-3 at ¶ 3; 149-4 at ¶ 3 (each plaintiff stating that "[d]uring my employment, I generally worked at least 50 hours per week. I sometimes worked even more hours.").[8] And to the extent

---

[8] Although not raised by Defendants, to the extent their argument implicates the "fluctuating workweek" method of calculation set forth in 29 C.F.R. § 778.114, it fails in that respect as well. This method may be used "where the evidence shows that the employee and employer shared a clear mutual understanding that a fixed weekly salary was intended as compensation for all hours worked each workweek. In such case, the regular rate must be separately calculated for each week by dividing the weekly salary by the hours actually worked by the employee during that week." *Morales*, 2022 U.S. Dist. LEXIS 95768 at *15 n.10 (citing 29 C.F.R. § 778.114) (internal citation and quotation marks omitted). Under this method, the Court would divide Plaintiffs' weekly salary by the actual number of hours worked in a given week to determine that week's pay rates. "Critically, 'the burden is on the employer, and not the employee, to establish that the parties mutually agreed upon [a fluctuating workweek] form of compensation.'" *Id.* (quoting *Bredbenner v. Liberty Travel, Inc.*, 2009 U.S. Dist. LEXIS 67122, 2009 WL 2391279, at *2 (D.N.J. July 31, 2009)); *see also Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 616 (5th Cir. 2017) ("The fluctuating workweek method may be applied only where the employee 'clearly understands' that her salary is intended to compensate any *unlimited* amount of hours she might be expected to work in any given week . . ."). Defendants plainly have not met this burden (indeed, they do not assert a fluctuating workweek

Defendants want the Court to set the divisor at fifty because that is the number of hours Plaintiffs' salaries were intended to compensate, that argument also fails, since, as noted, Defendants' pay records indicate Plaintiffs' salaries to correspond to forty-hour workweeks.[9] *See* Def. Cert., Exs. 11-19. As a result, even if the Court were to assume the "intended to compensate" rule applies here, there exists a question of material fact as to whether Plaintiffs' salaries were intended to compensate them for fifty hours each workweek.

Where, as here, the record presents questions of material fact as to the calculation of an employee's overtime rate, summary judgment must be denied. *See, e.g.*, *Fiallos v. Hamzah Slaughter House, LLC*, 2022 U.S. Dist. LEXIS 6050, at *11 (D. Md. Jan. 11, 2022) (denying summary judgment in part because there "remain[ed] a material issue of fact concerning the calculation of Plaintiff's hourly rate"); *Dearth v. Hartford Fire Ins. Co.*, 2018 U.S. Dist. LEXIS 160956, at *19 (M.D. Fla. Sep. 4, 2018) (denying summary judgment "[b]ecause the Court does not have a sufficient factual basis to determine how any overtime that may be owed should be computed") (citing *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1269 (11th Cir. 2008) (reversing instruction for jury "to assume as a fact that the weekly salary was intended to

---

argument at all), and so the Court cannot grant them judgment on this theory. *See, e.g.*, *Tooker v. Blujay Sols., Inc.*, 2024 U.S. Dist. LEXIS 22359, at *3 (W.D. Mich. Feb. 2, 2024) ("[T]here are disputed fact issues that preclude summary judgment on the fluctuating workweek calculation of damages."); *Cooper v. Green Pond Animal Care Ctr.*, 2015 U.S. Dist. LEXIS 67636, at *9 (D.N.J. May 22, 2015) ("Because there is a contested issue of fact as to whether Plaintiffs and Defendants had a 'clear mutual understanding' as to their compensation arrangement, the Court cannot determine that the FWW method applies as a matter of law.").

[9] Further, defendant Huang testified that Defendants calculated Plaintiffs' rates using fifty-five hour weeks. *See* ECF No. 149-1 at 128. There is also testimony from the Plaintiffs that they were hired with the understanding that they were to work at least fifty hours per week. *See* 150-1 at 7. And, Lee's onboarding materials indicate she was hired to work forty hours per week. *See* Def. Cert., Exs. 8-10. In other words, while Defendants seem to urge the Court to accept that Plaintiffs' salaries were intended to compensate them for exactly fifty hours per week, there is evidence in the record suggesting this figure is both more *and less* than fifty.

compensate the store managers for however many hours they actually worked" despite conflicting evidence)); *Baker v. D.A.R.A. II, Inc.*, 2008 U.S. Dist. LEXIS 8741, at *29 (D. Ariz. Jan. 22, 2008) ("The record contains conflicting evidence regarding Plaintiff's regular rate of pay. . . . Because the summary judgment standard requires that '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor,' the Court finds that a genuine issue of material fact exists regarding Plaintiff's regular rate of pay. Determining Plaintiff's rate of pay . . . depends on credibility determinations which are for the finder of fact.") (citation omitted); *cf. Hanson v. Camin Cargo Control, Inc.*, 2015 U.S. Dist. LEXIS 49896, at *21-22 (S.D. Tex. Apr. 16, 2015) ("Given the signed agreements expressly acknowledging the understanding that inspectors' salaries were intended to cover the total number of hours worked, no matter how few or many, plaintiffs' evidence is insufficient to create a genuine issue of material fact on the issue."). Considering the conflicting evidence (and inconsistent arguments) supporting Defendants' request to establish a method of computing Plaintiffs' overtime rates, the Court will deny this portion of Defendants' motion.[10]

### d. Liquidated Damages

In their opposition, Plaintiffs discuss a 2019 amendment to the WHL providing for recovery of "liquidated damages equal to not more than 200 percent of the wages due". N.J.S.A. 34:11-4.10 (the "Wage Theft Act" or "WTA"). Relying solely on *Castro v. Linden Bulk Transp. LLC*, 2021 N.J. Super. Unpub. LEXIS 3855 (Essex Cty. Sup. Ct. Jan. 4, 2021) — a state trial court decision — Plaintiffs seek a finding that the liquidated damages provision should apply retroactively (*i.e.*, to Plaintiffs' dates of employment before the August 6, 2019 effective date of

---

[10] Plaintiffs' opposition notes that "Defendants' proposed calculations do not take into account the raises obtained by the Plaintiffs." Opp. at 11. As the Court will decline to accept Defendants' method of calculation as a general matter, it need not address this specific argument.

the amendment). They argue retroactive application is appropriate because the amendment "did not expand or otherwise modify the legal terrain the Legislature had previously fashioned. Instead, the provision established the penalties imposed for violations. The amendment to such section thus does not interfere with vested rights, and only provides additional remedies for redress of a pre-existing actionable wrong." Opp. at 5-6 (quoting *Castro*) (cleaned up).[11]

Plaintiffs' argument fails. While they correctly cite *Castro*'s conclusion, that holding is contrary to the overwhelming weight of authority in this and other federal districts. *See Ga Ho Kim v. DK Cosmetics*, 2022 U.S. Dist. LEXIS 32972, at *15 (S.D.N.Y. Feb. 23, 2022) ("[T]he overwhelming majority of courts (including, it appears, every federal court) to consider the issue have held that the WTA does not apply retroactively to conduct that predates August 6, 2019.") (collecting cases); *Jones v. HESP Solar*, 2021 U.S. Dist. LEXIS 90525, at *30 (D.N.J. May 12, 2021) ("[O]n many other occasions, courts in this district have come to the same conclusion as this Court, that the WTA . . . is not to be applied retroactively.") (collecting cases).

As this Court explained in rejecting a similar argument in *Perloff v. Somo Audience Corp.*, 2020 U.S. Dist. LEXIS 254987 (D.N.J. Apr. 21, 2020), *recon. denied*, 2020 U.S. Dist. LEXIS 249293,

> [i]t is well established that statutes generally should be given prospective application. The courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes.

---

[11] Plaintiffs did not affirmatively cross-move for this relief, nor did Defendants address this argument in their reply, thus implicating Federal Rule 56(f), which permits courts to grant "Judgment Independent of the Motion" upon "giving notice and a reasonable time to respond". FED. R. CIV. P. 56(f); *see, e.g.*, *Allard v. Eisenhauer*, 971 F. Supp. 2d 458, 469 (D.N.J. 2013) ("'[A]uthority has developed to allow a court to grant summary [judgment] to a non-moving party' so long as the court provides the adversarial party with notice that it is considering a *sua sponte* summary judgment motion.") (quoting *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004) (citation omitted)). Per Rule 56(f), the Court advised Defendants that it intended to resolve this question upon the present motion and provided Defendants with an opportunity to address the issue, which Defendants did. *See* ECF No. 151, 154.

> Courts apply a two-part test to determine whether the presumption that newly enacted laws are applied prospectively is overcome. The first part of the inquiry is whether the Legislature intended to give the statute retroactive application. Legislative intent can be determined in one of three ways: (1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant. . . .
>
> Here, the inquiry stops at the first prong. First, the Legislature has not expressed its intent — either explicitly or implicitly — to apply the Wage Theft Act retroactively. The plain words of the statute are clear. . . . [E]xcept for one section, not at issue here, "[t]his act shall take effect immediately." . . . . Second, these Wage Theft Act provisions are not curative. . . . [A]mendments are curative only where they correct a prior version of a statute that contained an error or ambiguity. Under this narrow definition, the Wage Theft Act amendments that Plaintiff invokes here — the significant expansion of available damages and the addition of a new retaliation presumption — cannot be considered curative. . . . Finally, the expectations of the parties do not warrant applying the Wage Theft Act's liquidated damages and retaliation amendments retroactively. Plaintiff resigned his employment . . . before the Wage Theft Act was passed and filed this lawsuit . . . before the Wage Theft Act was passed. . . . Given this timeline, it would be difficult to conclude that the parties had a reasonable expectation that the Wage Theft Act would retroactively apply to events that occurred months before its passage.

*Id.* at *6-9 (citations and quotation marks omitted).[12]

---

[12] Moreover, *Castro*'s reasoning has been expressly called into question. In *Jones*, Judge Chesler observed that "in both of the cases relied upon by the court in *Castro*, it was clear that the legislature intended for the statute to apply retroactively and the only question was a constitutional one. As such, the court in *Castro* did not appear to consider whether the legislature intended for the WTA to apply retroactively." 2021 U.S. Dist. LEXIS 90525, at *28. He further noted, as did this Court in *Perloff*, that "there is no indication here that the legislature intended for the WTA to apply retroactively. To the contrary, the WTA states that it is to be given effect immediately, and New Jersey courts have historically considered this type of language to demonstrate that the legislature intended a statute to only apply prospectively." *See id.* He also disagreed with *Castro*'s reasoning that the WTA "did not create any new rights, but merely strengthened the remedies available for already actionable conduct." *See id.* at *28-29 (quoting *Castro*). Judge Chesler therefore "d[id] not find the court's conclusion in *Castro* to be persuasive." *Id.* at *29. This Court agrees.

In short, both the weight of authority as well as the governing standards for retroactive applicability militate against retroactive application of the WTA. As a result, Plaintiffs' request to apply the 200% liquidated damages provision to their pre-amendment employment is denied.

## V.     Conclusion

For the reasons stated, Defendants' motion for partial summary judgment (ECF No. 143) is granted in part and denied in part, and Plaintiffs' informal cross-motion (ECF No. 149) is denied. An appropriate Order follows.

Dated: April 3, 2024

*s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.